HAROLD W. HENDRICKSON AND LOIS M. HENDRICKSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hendrickson v. Commissioner
Docket No. 18249-85.
United States Tax Court
T.C. Memo 1987-566; 1987 Tax Ct. Memo LEXIS 564; 54 T.C.M. (CCH) 1079; T.C.M. (RIA) 87566; November 12, 1987. Michael C. Doering, for the petitioners. Gary Bloom, for the respondent. DINAN
MEMORANDUM OPINION DINAN, Special Trial Judge: This case was assigned pursuant to the provisions of section 7456(d) (redesignated as section 7443A by the Tax Reform Act of 1986, Pub. L. 99-514, section 1556, 100 Stat. 2755) and Rules 180, 181 and 182. [1] Respondent determined a deficiency in Harold and Lois Hendrickson's [2] Federal income tax for the taxable year 1982 in the amount *566 of $ 4855.00. Concessions having been made by both parties, the issue remaining for decision is whether a working interest in a gas well constitutes a trade or business within the meaning of section 1402(a). Many of the facts have been stipulated. The stipulations of fact and the exhibits attached thereto are incorporated by this reference. At the time the petition was filed, petitioner resided in Garden City, Kansas. Petitioner was an irrigation sprinkler salesman until he retired in 1980. In 1979 petitioner purchased a 21.875 percent working interest in the Minter-Wilson #1 lease, a gas well. In 1979 he purchased similar interests in two more gas wells. Petitioner did not have any experience in the oil and gas business and relied on the suggestions of his friends as *567 to which leases he should purchase. A working interest in a gas well makes the interest owner liable for the operation and production of the well. The working interest also gives the owner the right to the delivery of gas in kind so that the owner can sell the gas to a preferred purchaser. Operating a working interest in a gas well requires expertise in drilling, geology and the oil business. Inexperienced owners of working interests, therefore, frequently "farm out" the management of a well to an operation company in exchange for a percentage of the profits from the production of the well. See generally Arthur Young's Oil and Gas: Federal Income Taxation, sec. 13 (1985). Petitioner and the other working interest owners farmed out the operation of Minter-Wilson #1 to Continental Energy (Continental). The owners and Continental signed a standard operating form which gave Continental the right to control the operation of the well, to make expenditures up to $ 10,000, and to sell the gas produced by the well. If an expense was greater than $ 10,000, Continental was required to consult with the owners of the working interest. Otherwise, Continental had the power to make expenditures *568 for which the owners would be liable. Continental could only be removed from the operation of the well by a vote of 51 percent of the ownership interests. Section 1401(a) imposes a tax on the "self-employment income of every individual," and that term is defined by section 1402(b) to mean the "net earnings from self-employment." For purposes of this case, net earnings refers to earnings from a "trade or business." Section 1402(a). The term "trade or business" in section 1402(a) has the same meaning as when used in section 162. Section 1402(c). Respondent determined that petitioner was liable for the self-employment tax on the income earned from his working interest in Minter-Wilson #1 because petitioner's working interest in the well constituted a trade or business. The term "trade or business" is not defined in section 162. It is often difficult to distinguish a "trade or business" from passive investments held for the production of income. It is necessary, therefore, to look at all the *569 facts and circumstances to determine if a particular activity constitutes a trade or business. Higgins v. Commissioner,312 U.S. 212, 217 (1941). In Higgins, the Supreme Court held that mere investing, including the active management of one's investments, is not the carrying on of a business. Higgins v. Commissioner, supra at 218. The question of whether particular activities related to transactions entered into for profit constitute a trade or business arises frequently in real estate matters where the ownership of property may be either a business or an investment. The passive ownership of rental property is not a business. Neill v. Commissioner,46 B.T.A. 197 (1942), while active management of the property is a business. Pinchot v. Commissioner,113 F.2d 718 (2d Cir. 1940), affg. 40 B.T.A. 1379 (1939). In this respect, the ownership of an interest in an oil lease is similar to the ownership of real estate. As respondent's own ruling acknowledges, "Whether coownership in a mineral lease constitutes *570 the carrying on of a 'trade or business' is dependent upon all the facts and circumstances in the particular case." Rev. Rul. 58-166, 1959-1 C.B. 324, 325. See Higgins v. Commissioner, supra at 217. In a case involving the accumulated earnings tax, Cataphote Corp. of Mississippi v. United States,535 F.2d 1225, 1236 (Ct. Cl. 1976), the United States Court of Claims stated: The line to be drawn between the ownership of a working interest which is equivalent to being in the oil and gas business and one which is akin to a mere corporate stock investment depends on the magnitude of the interest and whether or not the owner has direct operating and management responsibilities. * * *
Courts have examined the "magnitude of the interest" both in terms of the number of wells owned and the percentage of ownership in the working interest. First, if the taxpayer owns multiple wells, then the number of interests owned can indicate that the taxpayer is *571 in the gas business. That was the situation in Nemours Corp. v. Commissioner,38 T.C. 585, 601 (1962), affd per curiam 325 F.2d 559 (3d Cir. 1963) in which we held that a corporation was in the oil and gas business because of the "scope and magnitude" of the oil operations. Nemouurs owned 18 working interests in producing wells and was gradually taking over the operation of the wells from its operating agent. In contrast, petitioner owned three working interests in gas wells and was not making any effort to enter the oil and gas business. Therefore, Nemours is factually distinguishable from this case. Second, if the taxpayer owns a sufficient part of the working interest in a well or wells, then he may be in a trade or business. In Di Portanova v. United States,690 F.2d 169, 175 (Ct. Cl. 1982) (trade or business for purposes of the tax on the income of nonresident aliens under section 871) the Court of Claims held that a trust was not in the oil and gas business because the trust's 2 1/2 percent interest in the well was so small that the trust "could not play a significant role in or be able to exert any influence upon *572 the management or operation of the unit." This suggests that a large enough interest in a well would allow the taxpayer to indirectly operate the well through an operating company and achieve the same result as if the well were operated directly. The facts in Di Portanova closely parallel the facts in this case. In both cases, the operating companies had the exclusive right and duty to operate the well. The operating companies had the power to make expenditures up to a specified sum. The operating companies also could only be removed by a majority vote. The principal difference between the facts in Di Portanova and the facts in this case is the working interest percentage. Here, petitioner held a 21.875 percent working interest in the well. However, because of petitioner's lack of experience in the gas business and because he held a minority working interest in the well, we find that petitioner was unable to play an active part in the management and operation of the well. Although the owners of the well collectively have overall supervision and control over the well, which Continental operates for them, the petitioner played no role in that activity. *573 The right to participate in the operation of a well is not enough to constitute active participation in the business. Petitioner could not have influenced the decisions of the operating company because he had no working knowledge of how to operate a well. Petitioner could not exert any influence through his ownership because he had a minority interest, and could not remove Continental without the consent of at least two other owners. [3] Petitioner's interest in the well was merely a passive investment. His income from the operation of the well, therefore, was not received from a trade or business. We find that petitioner was not subject to the self-employment tax. Accordingly, we hold for the petitioner on this issue. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1986, as in effect during the year in issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Lois Hendrickson is a party to this action solely because she filed a joint return for 1982 with Harold Hendrickson. All further references to petitioner will be to Harold Hendrickson. ↩
3. Respondent contends that there was an agency relationship between petitioner and Continental. As we have already discussed, petitioner did not have the requisite control over Continental for an agency relationship to arise. See generally 3 Am. Jur. 2d Agency sec. 2↩ (1986).