ESTELLA G. JOHNSON, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Johnson v. Commissioner
Docket No. 12402-89
United States Tax Court
T.C. Memo 1990-461; 1990 Tax Ct. Memo LEXIS 506; 60 T.C.M. (CCH) 603; T.C.M. (RIA) 90461; 110 Oil & Gas Rep. 609; August 27, 1990, Filed *506 Decision will be entered for the respondent. Joel T. Sawyer, for the petitioner. Kenneth L. Bressler, for the respondent. DAWSON, Judge. DAWSON
MEMORANDUM OPINION Respondent determined a deficiency of $ 2,015.72 in petitioner's Federal income tax for 1987. At issue is whether petitioner's net income from oil and gas working interests in 1987 is subject to self-employment taxes imposed by section 1401. [1]
*509 This case was submitted fully stipulated. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. The pertinent facts are summarized below. Petitioner was a resident of Ft. Worth, Texas, when she filed her petition in this case. During 1987, petitioner owned working interests in seeral oil and gas properties. She reported the revenues and expenses of these properties on Schedule C of her 1987 Federal income tax return. Her net income from the oil and gas working interests was $ 16,388. She did not report the income on a Schedule SE and pay self-employment tax. The revenues consisted solely of the gross income from the sale of oil, gas, or other minerals from the producing oil and gas wells. Petitioner has very limited knowledge about oil and gas operations. She did not participate in any activities of the operation of the oil and gas properties. She is an inactive investor. Petitioner entered into standard form operating agreements for the operation of the specific oil and gas properties with either ALN Resources Corporation or William D. Johnson Company. Some of the salient terms and provisions of the agreements are as follows: *510 Under Article III all costs and liabilities incurred in operations under the agreement are to be borne and paid by the parties in proportion to their respective working interests. All equipment and materials acquired in operations as well as oil and gas produced are owned by the parties in proportion to their respective interests. Regardless of who contributed the lease(s) and/or oil and gas interest(s), each party entitled to a share of gas and oil production is responsible for the payment of royalties "to the extent of his interest in such production." Article V names the "Operator" and provides that the Operator "shall conduct and direct and have full control of all operations on the Contract Area." The term "Contract Area", as defined by the agreement, means all lands, oil and gas leasehold interests, and oil and gas interests intended to be developed and operated for oil and gas purposes under the operating agreement. The Operator may be removed by the affirmative vote of two or more persons owning a majority interest. Similarly, a replacement Operator shall be selected by the affirmative vote of two or more parties with a majority interest. The selection and number of *511 employees used, hours of labor, and compensation of employees are left to the discretion of the Operator. All employees are considered by the agreement to be the employees of the Operator. Under Article VI each party has access to the Contract Area at all reasonable times, at its sole cost and risk to inspect or observe operations, and shall have access at reasonable times to information pertaining to the development or operation thereof, including the Operator's books and records relating thereto. Each party is required to take in kind or separately dispose of its proportionate share of all oil and gas produced and is entitled to payment directly from the purchaser. If a party does not make such arrangements, the Operator has the right to purchase, or sell to others, the party's proportionate share of the oil and gas. Article VII of the operating agreement provides: The liability of the parties shall be several, not joint or collective. Each party shall be responsible only for its obligations, and shall be liable for its proportionate share of the costs of developing and operating the Contract area. * * * It is not the intention of the parties to create, nor shall this *512 agreement be construed as creating, a mining or other partnership or association or to render the parties liable as partners. Also under Article VII the Operator is responsible for the payment of all expenses and liabilities incurred in operations, but is reimbursed in proportion to the parties' relative interests. However, the Operator is prohibited from undertaking any single project reasonably estimated to require an expenditure of over $ 10,000 without the consent of the parties. Article IX incorporates an election under section 761 which, in relevant part, provides: This agreement is not intended to create, and shall not be construed to create, a relationship of partnership or an association for profit between or among the parties hereto. Notwithstanding any provision herein that the rights and liabilities hereunder are several and not joint or collective, or that this agreement and operations hereunder shall not constitute a partnership, if, for federal income tax purposes, this agreement and the operations hereunder are regarded as a partnership, each party hereby affected elects to be excluded from the application of Subchapter "K", Chapter 1, Subtitle "A", of the Internal *513 Revenue Code of 1954, as permitted and authorized by Section 761 of the Code and the regulations promulgated thereunder. * * * In his notice of deficiency respondent determined that petitioner's ownership of the oil and gas working interests is considered as carrying on a trade or business either as a partner or through an agent, and she is therefore subject to self-employment tax on her net income. Section 1401(a) and (b) imposes a tax on the "self-employment income" of every individual. In general terms, "self-employment income" is defined as "net earnings from self employment" to the extent that such earnings do not exceed the Social Security contribution and benefit base. Sec. 1402(b). Subject to exceptions not relevant herein, the term "net earnings from self-employment" means the gross income derived from carrying on a trade or business less deductions properly attributable thereto "plus his distributive share (whether or not distributed) of income or loss described in section 702(a)(8) from any trade or business carried on by a partnership of which he is a member." Sec. 1402(a). *514 The term "carrying on a trade or business" in section 1402 is generally given the same connotation as in section 162. Sec. 1402(c). Petitioner contends that the income from her working interests is not subject to self-employment tax because the working interests are merely investments; and that her activity in connection with the working interests does not rise to the level of carrying on a trade or business. To the contrary, respondent contends that petitioner is subject to self-employment tax because she is carrying on a trade or business either through an agent or as a partner in a partnership. We agree with respondent that petitioner was a partner in a partnership. Therefore, we do not consider whether petitioner is carrying on a trade or business individually. Petitioner relies heavily on her lack of activity, experience and knowledge of the oil and gas business, and her minority working interests in the oil and gas properties in urging us to find that she was not involved in a trade or business. See Hendrickson v. Commissioner, T.C. Memo. 1987-566. As we indicated in Cokes v. Commissioner, 91 T.C. 222, 235 n. 16 (1988), the partnership *515 issue which was of critical importance in Cokes, as in this case, was not raised in Hendrickson. Section 7701(a)(2) defines a partnership as a "syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation." For purposes of the Internal Revenue Code, "the term 'partnership' is not limited to the common law meaning of partnership, but is broader in its scope and includes groups not commonly called partnerships." Sec. 301.7701-1(c), Proced. & Admin. Regs. The operating agreement specifies that each owner of a working interest owns the gas and oil produced in proportion to his or her working interest. Each owner of a working interest is individually responsible for an aliquot portion of production expenses. All equipment used in operations is owned in proportion to the parties' interest. The expenses are initially paid by the Operator, but are reimbursed by the working interest owners. Collective *516 action of at least two owners with a majority working interest is required for expenditures of over $ 10,000, and to remove and replace the Operator. Thus, we conclude that the owners of the working interests created a pool or joint venture upon the execution of the operating agreement delegating routine operating authority to the Operator. Because a pool or joint venture is treated as a partnership for income tax purposes, it necessarily follows that the income petitioner received from her working interests was income from a "partnership" as defined in section 7701(a)(2). Accordingly, petitioner is liable for self-employment tax on the net income received from her working interests. Cokes v. Commissioner, supra.See and compare Bentex Oil Corp. v. Commissioner, 20 T.C. 565 (1953); Oller v. Commissioner, T.C. Memo. 1981-124. The election under section 761 contained in the operating agreement does not prevent a pool or joint venture from becoming a partnership, or change the nature of the entity. Cokes v. Commissioner, supra at 231. The election merely prevents the application of the subchapter K rules *517 while other provisions of the Code apply as if no election existed. See Bryant v. Commissioner, 46 T.C. 848 (1966), affd. 399 F.2d 800 (5th Cir. 1968). Petitioner also contends that, even if a partnership exists, the income she received in 1987 is section 702(a)(7), not section 702(a)(8), income. We disagree. Section 702(a)(8) provides, "In determining his income tax, each partner shall take into account separately his distributive share of the partnership's * * * (8) taxable income or loss, exclusive of items requiring separate computation under other paragraphs of this subsection." In general, section 702(a)(8) income is partnership net income not requiring a special computation under some other Code provision in determining a partner's taxable income. All revenues from petitioner's working interests came from the sale of oil and gas. The intangible drilling costs and possibly the depletion expense are the only items of deduction immediately apparent from petitioner's Schedule C that would be separately stated under section 702(a)(7). Sec. 1.702-1(a)(8)(i), Income Tax Regs *518 ; and secs. 611 through 613. The other expenses listed on petitioner's Schedule C would be properly combined under section 702(a)(8). Finally, petitioner argues that if she is considered to be a partner in a partnership, she should be considered a limited partner due to the nature of her interest; and that a limited partner's share of partnership income is not subject to self-employment tax. The short answer to this contention is that petitioner is bound by the form in which she cast her transaction. Commissioner v. National Alfalfa Dehydrating & Milling Company, 417 U.S. 134, 148-149 (1974). It is true that a limited partner's share of partnership income is not subject to self-employment tax. Sec. 1402(a)(2). However, limited partnerships are creatures of agreement cast in the form prescribed by State law. Tex. Rev. Civ. Stat. Ann. art. 6132a-1 (Vernon 1990). Petitioner's argument is not persuasive because she and the other working interest owners did not take the necessary steps to comply with Texas law. To reflect the foregoing, Decision will be entered for *519 the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986 as amended and in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩