ROSS W. CHRISTIAN AND BARBARA CHRISTIAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Christian v. Commissioner
Docket No. 25177-92
United States Tax Court
T.C. Memo 1995-12; 1995 Tax Ct. Memo LEXIS 12; 69 T.C.M. (CCH) 1646; January 11, 1995, Filed *12 Decision will be entered for respondent. For petitioner: Richard H. Tye. For respondent: Brently W. Free. PARR
PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: Year
Deficiency
1988
$ 11,041
1989
5,506
Petitioners have made some concessions. The only issue presented for decision is whether petitioners are entitled to deduct, pursuant to sections 163(a)[1] and 163(h)(2)(A), all of the interest they paid on indebtedness in 1988 and 1989 with respect to an unimproved tract of land purchased for future development into rural residential homesites, or whether the interest they paid constituted "investment interest", the deductibility of which is limited by the provisions of section 163(d)(1) and (3)(A). Resolution of this issue depends on whether the interest paid on the indebtedness is properly allocable to a trade or business carried on by petitioners during the years in question or is properly allocable to property held for investment. We hold that petitioners were not engaged in the business of real estate subdivision development during 1988 and 1989, and that the property *13 was held for investment. Consequently, the deductions for interest paid on the indebtedness are subject to the investment interest limitations of section 163(d). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulated facts and attached exhibits are incorporated herein by this reference. Petitioners are husband and wife who resided in Boerne, Texas, when they filed their petition in this case. Ross W. Christian (hereinafter petitioner) has been employed by Dean Witter Reynolds as a stockbroker for the past 14 years. During 1988 and 1989 Barbara Christian was employed by Harold Cooper, M.D. On January 24, 1985, petitioners purchased 67.19 acres of land (the property) located in Kendall County near Boerne, Texas. They bought it for $ 503,925. In conjunction with their purchase of the property, petitioners executed *14 a Deed of Trust to Secure Assumption of a $ 239,975.84 note on the property from James M. Chittim to Del D. Baker, Jr. They executed a Deed of Trust to Secure Assumption of a $ 15,813.34 note on the property from Del D. Baker, Jr., to George Karutz and J. Charles Hollimon. In addition, they executed a $ 148,135.82 promissory note to J. Charles Hollimon and George Karutz. They also received a loan of $ 70,000 from the Union Bank pursuant to a letter of credit. Thus petitioners' total indebtedness was $ 473,925. On October 29, 1985, petitioners sold an undivided 25-percent interest in the property to Robert Holland for $ 168,000. Mr. Holland executed a $ 25,000 note to petitioner, assumed $ 59,993.96 of the Chittim note, $ 3,953.33 of the Baker note, and $ 37,033.95 of the Karutz and Hollimon note, and paid petitioners $ 42,018.76. Petitioners reported on their Federal income tax returns interest income of $ 2,093 for 1988 and $ 1,897 for 1989 received from the Robert Holland note. They also reported gains on the installment sale of the undivided 25-percent interest in the property of $ 1,155 for 1988 and $ 1,276 for 1989. For 1985, 1986, and 1987 petitioners reported interest *15 paid on their indebtedness as investment interest for Federal income tax purposes. However, beginning in 1988, on the advice of their new accountant, petitioners claimed they were holding the property in the trade or business of real estate development, and they deducted $ 41,591 in 1988 and $ 37,908 in 1989 as business interest expenses on Schedule C. Although petitioner had engaged in several real estate transactions before purchasing the property, the prior transactions were not as extensive or expensive as the transaction in issue. Petitioner had not previously engaged in the trade or business of developing a real estate subdivision. Before purchasing the property, petitioner unsuccessfully sought investors for a joint venture. After it was purchased, he continued to seek investors, and he discussed the possibility of subdividing the property with several real estate developers. He had a preliminary plat prepared that subdivided the property into 2- to 3-acre lots. He later obtained a second preliminary plat dividing the property into 5-acre lots. Petitioner was advised of the legal requirements, costs, and time requirements for subdividing the property. A preliminary *16 plat must be prepared and submitted to the Office of Land Development. If approved by the County Commissioner's Court, the property should be surveyed and staked off. A final plat showing the metes-and-bounds description and acreage of each lot must be prepared and submitted to the Office of Land Development. The entire process takes from 6 months to 1 year. Petitioner did not submit either of the preliminary plats and he did not start the formal subdivision process. During the years in issue, petitioner continued to show the property to potential investors and individuals. The property was purchased at a time when real estate development in Texas was a booming business. Individuals were purchasing and "flipping" (selling after a substantial short-term increase in value) land for an immediate profit. Petitioner was offered and refused a flip with a $ 100,000 profit 6 months after purchasing the property. However, as previously stated, petitioners sold an undivided 25-percent interest in the property to an investor. Beginning in the latter part of 1985 there was a decline in the real estate market in Texas. This decline grew steadily in 1986 and 1987. Petitioner was unable *17 to secure additional investors to help him fund the costs of subdividing the property and building necessary roads. The severe decline in the real estate market and the lack of investors delayed the property's subdivision and development, as well as reduced the possibility of a flip. Although petitioner consulted several real estate developers about ways to develop a real estate subdivision on the property, no preliminary plat was submitted, no final plat was prepared, and no lots were staked out. In short, petitioner could not decide about the type and size of the tracts for a proposed subdivision development. One real estate developer thought the property could not be developed into a residential subdivision during 1985. Another recommended developing a mobile home subdivision. Still another developer thought the installation of a paved road on the property was necessary prior to any development. Petitioners were unable to obtain other investors for constructing a paved road into the property, and no paved roads were ever built. During 1988 and 1989 the property was in the same undeveloped condition as it was when petitioners purchased it in 1985. In those years it was *18 not used for any commercial purpose. It lay dormant, but was used occasionally for deer hunting. During 1988 and 1989 petitioners did not maintain an office, a separate bank account, or any books or ledgers for any real estate activity. They did not keep written records of the amount of time they devoted to planning the development of the property. However, petitioner estimated that he spent about 40 hours per month on the project or a minimum of 100 hours each year. Petitioners had not abandoned their interest in developing the property during the years in issue. In 1988 and 1989 petitioners reported no income from the sale of lots on the property. In the notice of deficiency respondent disallowed the claimed interest expenses for 1988 and 1989 on the ground that the interest was not properly allocable to petitioners' trade or business of real estate development, but determined that it was investment interest properly allocable to property held for investment. OPINION The principal issue in this case involves the application of section 163 to interest petitioners paid on indebtedness in 1988 and 1989 with respect to unimproved land. Petitioners contend that the interest *19 is fully deductible because it is properly allocable to their trade or business of developing the property into rural residential homesites. To the contrary respondent contends that the interest is properly allocable to property held for investment, and therefore only partially deductible. The answer turns on whether petitioners were engaged in a trade or business of real estate development. Section 163(a) provides the general rule that there shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness. However, as an exception to this general rule, section 163(h)(1) provides that in the case of a taxpayer other than a corporation, no deduction shall be allowed for personal interest which is paid or accrued during the taxable year. Pursuant to section 163(h)(2), personal interest does not include interest which is properly allocable to a trade or business, or investment interest. Section 1.163-8T(b)(7) and (c)(1), Temporary Income Tax Regs., 52 Fed. Reg. 25000 (July 2, 1987), provides that in general interest is properly allocable to a trade or business if the proceeds of the underlying indebtedness are expended *20 in connection with the conduct of a trade or business other than the trade or business of performing services as an employee. Section 163(d)(1), which contains another exception to the general rule of section 165(a), provides that the amount allowed as a deduction for investment interest for any tax year shall not exceed the net investment income of the taxpayer for the taxable year. Section 163(d)(3)(A) defines "investment interest" as any interest which is paid or accrued on indebtedness which is "properly allocable to property held for investment". In view of the above provisions, the interest in question is subject to the limitations of section 163(d)(1) and (h)(1) unless it was paid in connection with the conduct of a trade or business. Respondent acknowledges that the petitioners had a bona fide expectation of realizing a profit from the future sale of the property. In other words, the property was held for the production of income under section 212. However, it is respondent's position that petitioners have failed to establish that they were engaged in the trade or business of being a real estate developer during 1988 and 1989. Her assertion is that petitioners' activities *21 did not rise to the level of carrying on or engaging in a trade or business. Based on the facts and circumstances present in this record, we agree with respondent. The term "trade or business" is not defined in the Internal Revenue Code or the regulations. It is sometimes difficult to distinguish a "trade or business" from investments held for the production of income. Whether particular activities related to transactions entered into for profit constitute a trade or business is a question that often arises in real estate matters where the ownership of property may be either a business or an investment. Hendrickson v. Commissioner, T.C. Memo. 1987-566. To determine whether the activities of a taxpayer constitute carrying on a business requires an examination of the facts and circumstances in each case. Higgins v. Commissioner, 312 U.S. 212, 217 (1941). More recently, in Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987), the Supreme Court stated: We accept the fact that to be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity *22 and that the taxpayer's primary purpose for engaging in the activity must be for income or profit. A sporadic activity, a hobby, or an amusement diversion does not qualify.
Unimproved real estate has been subject to the "facts and circumstances" test of Higgins for determining whether a taxpayer is engaged in the conduct of a trade or business. See Polakis v. Commissioner, 91 T.C. 660, 667 (1988); Emery v. Commissioner, 17 T.C. 308 (1951); Gulick v. Commissioner, T.C. Memo. 1982-62. Notwithstanding that petitioner consulted with real estate developers, devoted considerable time and effort in planning to develop the property, and attempted to attract potential investors and capital, he never followed through on his plans to develop the property into rural residential homesites. He simply was not in that business in 1988 and 1989. At most, from the time the property was purchased through the years in issue, petitioner merely had plans for a potential business. His plans never materialized. They were only in the exploratory or formative stages. The postpurchase activities never *23 rose to the level of engaging in a trade or business so as to transmute the property into anything other than an investment. Polakis v. Commissioner, supra; Polachek v. Commissioner, 22 T.C. 858, 862-863 (1954). Carrying on a trade or business requires more than initial research into business potential and the solicitation of potential customers. Dean v. Commissioner, 56 T.C. 895, 902 (1971). It requires that the business must have actually commenced. Frank v. Commissioner, 20 T.C. 511 (1953). In Polakis v. Commissioner, supra, we dealt with the same issue in a factual setting quite similar to this case. In that case the question was whether the taxpayers were engaged in the trade or business of being real estate developers or whether they held certain undeveloped land for investment purposes. In Polakis, the taxpayers purchased undeveloped real estate and began to investigate the property's development potential. The taxpayers lacked the technical expertise to develop the property and were otherwise engaged *24 in full-time employment. The taxpayers investigated the development potential for 2 years, deducted interest expenses on the note for the property, ultimately determined a real estate subdivision was not feasible, and abandoned the project prior to any development on the property. In holding that the taxpayers' actions did not rise to the level of engaging in a trade or business, this Court stated that "the mere fact that property may have been acquired with the ultimate intention of reselling does not result in a determination that the property was held primarily for sale in the ordinary course of business." Polakis v. Commissioner, supra at 669. The failure to complete the preliminary steps of obtaining approval for the sewer trunk and securing proper zoning designations from the county was incompatible with the trade or business of developing the property. As in Polakis v. Commissioner, the petitioners in the present case purchased undeveloped land, began to investigate the development potential, and deducted the interest expenses in full on their Federal income tax returns. As in Polakis v. Commissioner, both of the petitioners in *25 the present case were employed full-time in other occupations, neither of them had any prior experience in the planning and development of a real estate subdivision, and the property remained in the same undeveloped condition at the time of trial as when it was purchased in 1985. Finally, as in Polakis v. Commissioner, the petitioners failed to satisfy a condition precedent to the development of the subdivision by obtaining approval of the subdivision from the local governmental authorities. Although petitioners obtained a preliminary plat in 1985, they never presented it to the local governmental authorities for approval. Their continued failure to obtain approval for a proposed subdivision from the local governmental authorities is inconsistent with the actions of individuals engaged in the trade or business of being real estate subdivision developers. We think it is significant that petitioner made no sales because there were no lots to sell. His sales activities in relation to soliciting investors to supply money for development and improvement of the property do not reach the level of soliciting customers. The property remained in the same condition it was in on the *26 date of purchase and the development process had not yet begun. At this stage of the development process investors can only be sought for the future trade or business of subdividing the property and selling lots. Even at the time of trial, petitioner was still trying to make decisions regarding the structure and type of development for this property, i.e., whether to subdivide the property into 3- or 5-acre tracts. Until that decision is made the subdivision process cannot be undertaken. The cost of pursuing the approval for the subdivision would have been minimal, yet petitioner failed to take the necessary steps of submitting either of the preliminary plats. Moreover, petitioners did not carry on the activity as an ongoing business by keeping books and records or by maintaining an office for any real estate activity. They did not have any prior experience with real estate subdivision development, and they did not earn a profit on the sale of any residential lots. The property was only used for recreational hunting during 1988 and 1989. Accordingly, we conclude that petitioners were not engaged in the business of real estate subdivision development in 1988 and 1989. It follows *27 that they held the property for investment, and therefore their interest deductions are limited by the investment interest limitations of section 163(d). Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩