T.C. Memo. 1997-280


UNITED STATES TAX COURT


ALLIE RAY McCULLEN AND SHURLEY G. McCULLEN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7042-95.                      Filed June 19, 1997.


<u>J. Wesley Casteen</u>, for petitioners.

<u>Amy Dyar Seals</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


COLVIN, <u>Judge</u>:  Respondent determined that petitioners are liable for income tax deficiencies of $12,514 for 1990 and $7,386 for 1991.  Respondent also determined that petitioners are liable for the accuracy-related penalty for negligence under section 6662(a) of $2,503 for 1990 and $1,477 for 1991.

After concessions, we must decide:

1. Whether petitioner Allie Ray McCullen had a trade or business of developing and selling real estate in 1990 and 1991. We hold that he did not.

2. Whether petitioners may deduct $23,067 for 1990 as interest related to farming. We hold that they may. Respondent contends that they may deduct $10,428 for 1990. Petitioners deducted $20,102 in 1990, but, as discussed below, petitioners paid more farm interest than they deducted.

3. Whether petitioners may deduct as interest related to a trade or business the interest paid on a $100,000 loan from South Carolina Bank that they used to buy stock in New-East Bank of Goldsboro (New-East Bank). We hold that they may not.

4. Whether petitioners paid $8,126 in interest to First Hanover Bank in 1990, as petitioners contend; $5,443, as respondent contends; or some other amount. We hold that petitioners paid $8,126 in interest to First Hanover Bank in 1990.

5. Whether petitioners are liable for the accuracy-related penalty for negligence under section 6662(a) for 1990 and 1991. We hold that they are.

Section references are to the Internal Revenue Code. Rule references are to the Tax Court Rules of Practice and Procedure. References to petitioner are to Allie Ray McCullen.

FINDINGS OF FACT

A.    Petitioners

Petitioners are married and lived in Clinton, Sampson County, North Carolina, when they filed their petition. Petitioners have a daughter who attended high school in 1990 and 1991.

Petitioner has lived in Sampson County all of his life. He has farmed since he was 13 years old. He is a college graduate with a degree in history. He has been a licensed realtor since 1974, when he started to work in the real estate business. In 1987, he became a director of a bank. He sometimes borrowed money from his great-aunt, Mary McCullen.

In 1990 and 1991, Mrs. McCullen was employed as a teacher with the Clinton City Schools. She earned $29,506 in 1990 and $31,220 in 1991.

B.    Petitioner's Real Estate Activities

1.    Petitioner's Purchase of Real Estate

Petitioner bought various parcels of real estate before and during 1990 and 1991. In 1990 and 1991, petitioner owned the Bass Town tract, Sadie Farm, Greenview tract, and Giddonsville Packing tract. He intended to resell the properties but did not do so during the years in issue for various reasons. He borrowed money from various financial institutions to buy the properties. Petitioners deducted interest related to these real estate

activities on Schedules C (Profit and Loss from Business) for their 1990 and 1991 income tax returns.

      a.   <u>Bass Town Tract, Sadie Farm, and Greenview Tract</u>

Bass Town tract was a farm that petitioner bought with a loan from First American Savings and Loan. Petitioner had difficulty selling the Bass Town tract because of changes in land development rules in Sampson County. Petitioner sold the Bass Town tract for a profit after 1991.

In 1990 and 1991, petitioners owned several chicken houses at Sadie Farm.

Petitioner could not sell the Greenview tract for development because of wetlands problems.

      b.   <u>Giddonsville Packing Tract</u>

At a time not stated in the record, petitioner bought a 5-percent interest in Giddonsville Packing Co., a company that packaged and marketed vegetables grown by its owners. Petitioner signed a promissory note making him jointly liable for the purchase with several other owners.

The company made a profit the first 2 years but lost money thereafter. Two of the persons who cosigned the note with petitioner filed petitions in bankruptcy. Petitioner was the only person who signed the note from whom the bank could collect. Petitioner bought the interests of the other Giddonsville Packing Co. owners so he would not be associated with a foreclosure. He financed the purchase with unsecured short-term notes.

Petitioner sold his interest in the Giddonsville Packing Co. at a loss.

2.  McCullen Real Estate and Development Co., Inc.

In 1978, petitioner incorporated McCullen Real Estate and Development Co., Inc. (McCullen Real Estate).  He is president, sole stockholder, principal agent, and an employee of McCullen Real Estate.

McCullen Real Estate received commissions when its employees sold real estate owned by third parties.  It also received fees for managing and appraising real properties.  McCullen Real Estate managed rental units for The A.F.T.E.R. Co. (described below at par. B-4-c).  McCullen Real Estate did not sell real estate that petitioner owned.

3.  Real Estate Business

Petitioner operated a business of appraising and managing real estate for third parties.  Petitioner did not sell any real property that he owned before or during the years in issue.  He did not advertise that any of his properties were for sale during the years in issue.

4.  Real Estate Partnerships

a.  McCullen-Clifton

In 1974, petitioner formed McCullen-Clifton, a general real estate business partnership.  Petitioner's partner in McCullen-Clifton had experience in the real estate business.  McCullen-

Clifton was dissolved in 1978 when petitioner started his own firm.

b.   Scott-McCullen and Godwin-McCullen

Petitioner formed a partnership with Scott (not otherwise described in the record) to buy, subdivide, and sell real property.  Scott and petitioner bought, subdivided, and sold real estate over the years.  They intended to have a satellite office in Onslow County.

In 1989, petitioner and Douglas Godwin (Godwin) formed a partnership called Godwin-McCullen Real Estate in Dunn, North Carolina.  The record contains no other information about these partnerships.

c.   The A.F.T.E.R. Entities

The A.F.T.E.R. Co. owned residential rental units which McCullen Real Estate managed.  Petitioner was also involved (the record does not specify how) in A.F.T.E.R. East Associates, which owned a multifamily housing project.

d.   Crown Farms Co.

Petitioner was involved (the record does not specify how) with Crown Farms Co.  Crown Farms bought residential lots.

C.   Petitioner's Farming Activities

Before the years in issue, petitioner raised cattle, tobacco, produce, hay, and grain crops.  His largest source of farming income in 1990 and 1991 was poultry.  He built his poultry facilities in 1968 and has operated them continuously

since then.  From 1968 to the date of trial petitioner significantly improved his poultry facilities, which he financed with short-term unsecured loans from financial institutions. Petitioner used the proceeds from his loans from New-East Bank, Bank of Stanley, Southern National Bank, and First Citizens Bank to finance his farm operations.  Petitioner sometimes farmed on real property that he had bought to resell but had not yet sold.

Petitioner's farming activities were profitable in 1990 and 1991.  However, petitioner's farm had losses for several years before the years in issue.  He paid his farming expenses from any of his bank accounts that had funds.  He also borrowed money to pay interest on loans.  Petitioner did not keep records showing how he used the proceeds of each loan.

Petitioner's only loan by wire transfer was from the Bank of Stanley.  Petitioner used the proceeds of that loan to pay farm operating expenses.

In 1990, petitioner owned three tractors, a bail wagon, and various implements such as plows, disks, a hay bailer, and a rake.  He financed the maintenance and replacement of equipment with short-term unsecured signature loans from financial institutions.

D.  <u>New-East Bank</u>

Petitioner was a founder, original organizer, stockholder, and director of New-East Bank.  Petitioner, Godwin, and Jim Cain (not otherwise described in the record) organized New-East Bank

to make business contacts and to provide funds for the bank investors' needs. Petitioner borrowed $100,000 from South Carolina National Bank to buy New-East Bank stock around 1987. On their income tax returns for 1990 and 1991, petitioners deducted the interest on that loan as a business expense. Petitioner borrowed money from New-East Bank to pay farm expenses.

Petitioner sold his New-East Bank stock for a loss of $30,000 to $40,000 in 1994 or 1995.

E.  Loans From Other Banks

In 1990 and 1991, petitioner paid interest on many loans. The loans on which interest was paid, the deductibility of which remains in issue after concessions, are listed in par. A-1 of the opinion.

Petitioner used one of the two First American Bank loans in dispute to buy the Bass Town tract. He used the other First American Bank loan as a second mortgage on his satellite office in Onslow County.

F.  Petitioners' Finances and Bank Accounts

Mrs. McCullen had a personal checking bank account into which she deposited her salary. Petitioner had a separate personal bank account. He also had two farm bank accounts and one account for his real estate business. His corporation had one account. Petitioner used money from whichever account had enough money to pay other business expenses. For example, he

sometimes used funds from the real estate business account to finance farm operations.

Banks made short-term unsecured loans to petitioner. They did not require petitioners to identify the purpose of the loans.

In his records, petitioner charged the interest to the account that he used to pay the interest. He kept no records of how he used his funds.

Petitioners concede that petitioner's corporation paid the following interest that petitioners deducted on their income tax returns for 1990: (1) $1,620 to New-East Bank; (2) $1,177 to Southern National Bank; (3) $527 to Standard Bank and Trust; (4) $1,168 to United Carolina Bank; and (5) $570 to Mary McCullen. Petitioners also concede that petitioner's corporation paid the following interest that petitioners deducted on their income tax returns for 1991: (1) $3,590 to New-East Bank; (2) $956 to Mary McCullen; (3) $1,796 to South Carolina National Bank; (4) $1,432 to Barclay's America; and (5) $594 to First Citizens Bank. Petitioner's corporation also deducted this interest for 1990 and 1991.

Petitioner used his checkbooks to create ledgers for his farm and other business accounts. Petitioner did not have a formal balance sheet or income statement for his businesses. He gave an informal annual financial statement to banks when he needed a loan.

Petitioner paid $8,126 of interest to First Hanover Bank in 1990.

G. Petitioners' Income Tax Returns

Johnson Sheffield (Sheffield), a certified public accountant, prepared petitioners' income tax returns from 1981 through the years in issue. Petitioner prepared and gave Sheffield a summary of petitioners' income and expenses for 1990 and 1991. Sheffield prepared petitioners' returns based on petitioner's summary. In his summary, petitioner treated interest paid from each account as if it were an expense of that account. Sheffield did not know that petitioner moved assets and money between his real estate and farming operations.

Sheffield did not prepare McCullen Real Estate's income tax returns (Forms 1120) for 1990 and 1991. Petitioners concede that they and McCullen Real Estate deducted some of the same interest items.

On their income tax returns, petitioners reported wages and salaries of $61,991 in 1990 and $31,220 in 1991, and farm income of $12,959 in 1990 and $26,151 in 1991. On their Schedules C, they reported having gross receipts of $14,675 in 1990 and $9,921 in 1991 from appraisals. They reported no income or advertising expenses relating to the sale of real property in the years in issue. Petitioners did not report that they had any inventory on Schedule C of their returns for the years in issue.

On Form 4797 (Sales of Business Property) attached to their 1991 return, petitioners reported that they bought a packing shed (not otherwise described in the record) on March 11, 1989, having an original basis of $35,104, reduced by depreciation of $1,820, and sold it for $20,000, producing a $13,284 loss.

Petitioners deducted interest of $38,049 for 1990 and $33,571 for 1991 on their Schedules C. Petitioners deducted interest of $20,102 for 1990 and $16,289 for 1991 on their Schedules F (Farm Income and Expenses).

OPINION

A. Parties' Contentions and Background

1. Interest Petitioners Deducted as a Trade or Business Expense

Respondent contends that the following amounts of interest paid by petitioners in the years in issue are investment interest and not related to petitioner's trade or business:

1990

| Lender | Amount |
|--------|--------|
| First American Savings Bank | $4,223 |
| Mary S. McCullen | 2,936 |
| South Carolina National Bank | 9,773 |

1991

| Lender | Amount |
|--------|--------|
| First American Savings Bank | $4,964 |
| Mary S. McCullen | 2,711 |
| South Carolina National Bank | 5,823 |

Petitioners contend that they may deduct these amounts as interest because the loans related to petitioner's trade or

business of selling real estate.  Respondent contends that petitioners may not deduct interest related to developing and selling real estate as a trade or business expense because that activity was not a trade or business.  Respondent contends that petitioners may deduct the interest as investment interest.

2.    Interest That Petitioners Deducted as Farm Interest

Respondent contends that petitioners have proven only that they paid $10,428 in interest for their farming activity for 1990.  Respondent contends that the following interest paid by petitioners and deducted as farm interest is personal interest:

1990

| Lender | Amount |
|---|---|
| New-East Bank (#8501000163, #8501001047, and #7501000074) | $5,394 |
| First Hanover Bank | 8,126 |
| Southern National Bank (#274-114025 and #273-018600) | 2,074 |
| Bank of Stanley | 1,826 |
| United Carolina Bank #0174 | 567 |
| First Citizens Bank | 3,345 |
| Total | $21,332 |

Petitioners contend that they may deduct these amounts as trade or business interest because petitioner used the proceeds from the loans for farming.

3.    Background

Generally, a taxpayer other than a corporation may not deduct personal interest.  Sec. 163(h)(1).[1]  Investment interest,

_____

[1] Sec. 163(h) provides in pertinent part:

(continued...)

interest allocable to a trade or business (other than the trade or business of performing services as an employee), and qualified residence interest are not personal interest.  Sec. 163(h)(2).

A taxpayer may deduct 10 percent of personal interest he or she paid in 1990.  Sec. 163(h)(5), (d)(6)(B).  A taxpayer may deduct interest on property held for investment up to the net investment income of the taxpayer for the taxable year.  Sec. 163(d)(1).  Net investment income is the amount by which investment income exceeds investment expenses.  Sec. 163(d)(4)(A).

---

[1](...continued)
SEC. 163(h) Disallowance of Deductions for Personal Interest.--

(1)  In General.--In the case of a taxpayer other than a corporation, no deduction shall be allowed under this chapter for personal interest paid or accrued during the taxable year.

(2)  Personal Interest.--For purposes of this subsection, the term "personal interest" means any interest allowable as a deduction under this chapter other than--

(A)  interest paid or accrued on indebtedness properly allocable to a trade or business (other than the trade or business of performing services as an employee),

(B)  any investment interest (within the meaning of subsection (d)) * * *

B.   Whether Petitioners May Deduct Interest on Their Schedules C

1.   Whether Petitioner Was in the Trade or Business of Buying and Selling Real Estate

To be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and the taxpayer's primary purpose for engaging in the activity must be for profit.  Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). Whether a taxpayer's activities are a trade or business is a question of fact that must be decided based on the circumstances of each case.  Higgins v. Commissioner, 312 U.S. 212, 217 (1941). Courts have considered several factors in deciding whether a taxpayer was in the trade or business of buying and selling real estate, including:  (a) The nature and purpose of buying the property; (b) the length of time the taxpayer owned the property; (c) the continuity of sales activity over a period of time; (d) the number and frequency of sales; (e) the extent to which the taxpayer developed the property, solicited customers, and advertised; and (f) the ratio of sales to other sources of income.  United States v. Winthrop, 417 F.2d 905, 910 (5th Cir. 1969); Polakis v. Commissioner, 91 T.C. 660, 669-670 (1988); Hoover v. Commissioner, 32 T.C. 618, 625 (1959); Dressen v. Commissioner, 17 T.C. 1443, 1447 (1952); Thrift v. Commissioner, 15 T.C. 366, 369 (1950).

Petitioners contend that they bought their property for resale, but the objective facts show otherwise.  Petitioner had

no sales before or during the years in issue. There is no persuasive evidence that petitioners tried to develop or sell their property, solicit buyers, or advertise before or during the years in issue. Petitioners contend that the properties were available for sale. However, there is no evidence that they did anything to make this fact known to prospective buyers. Petitioners contend that petitioner did not need to advertise because his corporation did and he already had considerable name recognition. We disagree; his being well known was not a substitute for soliciting buyers, which is relevant to establishing his purpose in holding property.

The record does not show when petitioners bought the Bass Town and Giddonsville tracts. Petitioner sold them after 1991. A sporadic activity is not a trade or business. <u>Commissioner v. Groetzinger</u>, <u>supra</u> at 35; <u>Polakis v. Commissioner</u>, <u>supra</u> at 670-671; <u>Christian v. Commissioner</u>, T.C. Memo. 1995-12.

2.  <u>Petitioners' Other Contentions</u>

Petitioners contend that the fact that they farmed their land does not show that they were not trying to sell it. We agree. We did not consider the fact that they farmed some of the land in deciding whether they had a trade or business of selling real estate.

Petitioners contend that the factors stated in <u>Polakis v. Commissioner</u>, <u>supra</u>, and <u>Christian v. Commissioner</u>, <u>supra</u>, do not apply here because the facts in those cases differ. We disagree.

The legal principles and factors stated in those cases apply to whether a taxpayer had a trade or business of selling real estate. The factual differences between this case and those cases are immaterial.

Petitioners contend that the fact that they had only a few parcels of real estate does not show that they were not trying to sell them. We agree. We did not consider the number of parcels of real estate that petitioners owned in deciding whether they had a trade or business of selling real estate.

Petitioners point out that petitioner's primary occupation was appraising, managing, developing, and selling real estate. That does not establish that he had a trade or business of selling real estate.

3.  Conclusion

We conclude that petitioner did not have a trade or business of selling real estate in 1990 or 1991.[2] The interest petitioners paid to Mary McCullen, First American Savings Bank, and South Carolina National Bank is investment interest which petitioners may deduct under section 163(h)(2)(B) for 1990 and 1991 to the extent of their investment income.

---

[2] We need not decide respondent's alternate contention that petitioners may not deduct the interest at issue because petitioner commingled his real estate and farm accounts.

C.  Whether Petitioners May Deduct the Interest That They Claimed on Their Schedules F as Farm-Related Interest

1.  Whether the Interest Was Related to Farming

Respondent points out that petitioners commingled funds and did not keep accurate records.  Respondent contends that petitioners have not shown that the interest that they deducted on their Schedules F for 1990 related to farming.  We disagree.

Petitioner credibly testified that he used his loans from New-East Bank, Bank of Stanley, Southern National Bank, and First Citizens Bank for his farm operations.  Thus, we hold that petitioners properly deducted the interest remaining at issue that they paid to those banks for farm interest.  Petitioners may not deduct as farm interest the interest they paid to First Hanover Bank because petitioners have not shown that they used the loans from First Hanover Bank for farming.  Thus, that interest is personal interest.

Respondent contends that we should not rely on petitioner's testimony because it is self-serving.  We disagree.  We decide whether a witness is credible based on objective facts, the reasonableness of the testimony, the consistency of statements made by the witness, and the demeanor of the witness.  Quock Ting v. United States, 140 U.S. 417, 420-421 (1891); Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964); Pinder v. United States, 330 F.2d 119, 124-125 (5th Cir. 1964); Concord Consumers Hous. Coop. v. Commissioner, 89

T.C. 105, 124 n.21 (1987). We may discount testimony which we find to be unworthy of belief, Tokarski v. Commissioner, 87 T.C. 74, 77 (1986), but we may not arbitrarily disregard testimony that is competent, relevant, and uncontradicted, Conti v. Commissioner, 39 F.3d 658, 664 (6th Cir. 1994), affg. 99 T.C. 370 (1992) and T.C. Memo. 1992-616; Demkowicz v. Commissioner, 551 F.2d 929, 931-932 (3d Cir. 1977), revg. T.C. Memo. 1975-278; Banks v. Commissioner, 322 F.2d 530, 537 (8th Cir. 1963), affg. in part and remanding in part T.C. Memo. 1961-237; Loesch & Green Constr. Co. v. Commissioner, 211 F.2d 210, 212 (6th Cir. 1954), revg. and remanding a Memorandum Opinion of this Court dated December 11, 1952. Respondent offered no evidence to contradict petitioner's testimony. Petitioner's testimony was plausible, and, we believe, truthful.

Respondent contends that petitioners have not proven how much farm interest they paid because petitioner and his corporation paid interest. We disagree. Petitioners have conceded that they may not deduct interest that the corporation paid. We accept petitioner's testimony that he paid the interest at issue and that he used these loans for farming.

2. Conclusion

We conclude that, in addition to the $10,428 for 1990 which respondent concedes, petitioners may deduct the following as farm interest:

1990

| Lender | Amount |
|---|---|
| New-East Bank (#8501000163, #8501001047, and #7501000074) | $5,394 |
| Southern National Bank (#274-114025 and #273-018600) | 2,074 |
| Bank of Stanley | 1,826 |
| First Citizens Bank | 3,345 |
| Total | $12,639 |

Thus, petitioners may deduct total farm interest of $23,067 in 1990.

D.  Whether Petitioners May Deduct as Trade or Business Interest the Interest They Paid on the $100,000 Loan From South Carolina National Bank

Petitioner borrowed $100,000 from South Carolina National Bank to buy stock of New-East Bank.  Petitioners contend that the interest they paid on the South Carolina National Bank loan was related to petitioner's trade or business, making the interest deductible under section 163(h)(2)(A).  We disagree.

Petitioner's purchase of New-East Bank stock was not a trade or business.  Petitioner was not continuously and regularly involved in buying stock.  Commissioner v. Groetzinger, 480 U.S. at 35.  Petitioners contend that petitioner bought the New-East Bank stock to help him make business contacts and to provide a source of funds for his business.  Even if this were true, the interest on the loan to buy New-East Bank stock would not be deductible under section 163(h)(2)(A).  We are not convinced that the amount of interest petitioner paid to buy the stock bears any

reasonable relationship to the benefit petitioner got from owning stock in New-East Bank.

Petitioners contend that petitioner's purchase of the stock was not the purchase of a capital asset because he had no investment motive when he bought the stock. We disagree. Stock is generally a capital asset. Arkansas Best Corp. v. Commissioner, 485 U.S. 212, 216-217, 219, 222-223 (1988). Buying stock is not ordinarily an activity of a trade or business. Higgins v. Commissioner, 312 U.S. at 216 (managing securities investments and collecting income therefrom generally is not a trade or business, regardless of the amount invested, continuity of effort, or amount of time devoted to the activity).

Petitioners rely on Schanhofer v. Commissioner, T.C. Memo. 1986-166, where we held that the investment interest limitations of section 163(d) did not apply to interest paid by a taxpayer who borrowed money to buy stock in the company for which he worked. That case is distinguishable. In Schanhofer, the taxpayer paid a substantial premium for stock that was not marketable. The stock in Schanhofer had minimal growth potential. In contrast, petitioner bought unrestricted New-East Bank stock and did not show that he paid more than fair market value for the stock or that it had no growth potential.[3] This

---

[3] We did not consider sec. 163(h) in Miller v. Commissioner, 70 T.C. 448 (1978), and Schanhofer v. Commissioner, T.C. Memo. 1986-166, because it had not yet been enacted. We decided
(continued...)

case is more like <u>Miller v. Commissioner</u>, 70 T.C. 448 (1978), where we held that a taxpayer who borrowed money to buy a controlling interest in the stock of a bank so that he could become the bank's president held the stock as an investment.

We conclude that petitioners bought and held the New-East Bank stock as an investment, and that the interest on the loans was not properly allocable to a trade or business. Thus, the interest on the $100,000 loan from South Carolina National Bank is investment interest and is not trade or business interest under section 163(h)(2)(A).

E. Amount of Interest Paid to First Hanover Bank

Respondent contends that petitioners paid $5,443 in interest to First Hanover Bank in 1990 because that is the amount shown in petitioner's ledgers.[4] Petitioners contend they paid $8,126 because that is the amount First Hanover Bank reported in the Form 1098, Mortgage Interest Statement, it sent to petitioners for 1990. We agree with petitioners because we think the Form 1098 issued by First Hanover Bank is more reliable than petitioner's ledger sheets.

Respondent points out that petitioner testified that either he or his corporation paid the interest to First Hanover Bank and

---

[3](...continued)
whether the interest at issue was limited by sec. 163(d) in those cases.

[4] The ledger sheets show that petitioner paid First Hanover Bank interest of $5,485.19.

that petitioner's corporation paid other interest that petitioners erroneously deducted on their income tax returns for 1990 and 1991. Respondent contends that petitioner's corporation may have paid some of the interest. We disagree. The Form 1098 bears petitioner's Social Security number, and it was addressed to petitioner, not his corporation. We conclude that petitioner paid $8,126 to First Hanover Bank in 1990.[5]

F.    Whether Petitioners Are Liable for the Accuracy-Related Penalty Under Section 6662(a)

Petitioners contend that they are not liable for the accuracy-related penalty for negligence for 1990 and 1991 under section 6662(a) and (c). They contend that they acted reasonably under the circumstances. We disagree.

Taxpayers are liable for a penalty equal to 20 percent of the portion of the underpayment to which section 6662 applies. Sec. 6662(a). For purposes of section 6662(a), negligence includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code. Sec. 6662(c). The accuracy-related penalty under section 6662(a) does not apply to any part of an underpayment if the taxpayer shows that there was reasonable cause for that part of the underpayment and that the taxpayer acted in good faith. Sec. 6664(c)(1).

---

[5] This is personal interest for reasons discussed above at par. C-1.

Negligence is a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Neely v. Commissioner, 85 T.C. 934, 947 (1985). Failure to keep adequate records is evidence of negligence. Marcello v. Commissioner, 380 F.2d 499, 506-507 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964) and T.C. Memo. 1964-299; Magnon v. Commissioner, 73 T.C. 980 (1980). A taxpayer is required to maintain records sufficient to correctly prepare his or her tax return. Sec. 1.6001-1(a), Income Tax Regs. Petitioners bear the burden of proving that they are not liable for the accuracy-related penalty. Rule 142(a).

Petitioners concede that they should not have deducted interest paid by the corporation for each year in issue. They also concede that they commingled funds, had inadequate records, and made accounting errors. Petitioner did not coordinate petitioners' and the corporation's returns to avoid deducting the same items twice. Petitioner gave Sheffield summary sheets from which Sheffield prepared petitioners' tax returns. Sheffield did not have books and records from petitioner's businesses. Petitioner used a different return preparer to prepare the corporate income tax returns. Petitioner did not ensure that the two preparers handled various items consistently.

Petitioners contend that they should not be held liable for the accuracy-related penalty because they readily conceded their errors.  We disagree.  Conceding errors does not excuse the underlying negligence.

Petitioners also contend that they should not be held liable for the accuracy-related penalty because petitioner believed that he needed to pay expenses from whatever accounts had funds.  We disagree.  Petitioner could have recorded those payments properly.

We conclude that petitioners are liable for the accuracy-related penalty for negligence for 1990 and 1991 under section 6662(a) and (c).

To reflect concessions and the foregoing,

<u>Decision will be</u>

<u>entered under Rule 155</u>.