**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2014-6


UNITED STATES TAX COURT


ALBERT CHEN AND NAI-FEN CHEN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12982-12S.              Filed January 14, 2014.


Ronald Jay Cohen, for petitioners.

Peter N. Scharff, for respondent.


SUMMARY OPINION


DEAN, Special Trial Judge: This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code[1] in effect when the petition was

_____

[1]Unless otherwise indicated, all subsequent section references are to the
Internal Revenue Code (Code) in effect for the year in issue, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

filed. Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $8,093 in petitioners' 2009 Federal income tax and a section 6662(a) accuracy-related penalty of $1,618.60. The issues for decision are whether petitioners: (1) are entitled to a deduction for expenses on Schedule C, Profit or Loss From Business; (2) are entitled to an abandonment loss deduction; and (3) are liable for a section 6662(a) accuracy-related penalty.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits received in evidence are incorporated herein by reference.

Petitioners resided in New York when the petition was filed.

Albert Chen (petitioner husband) is a retired civil engineer. During his employment as a civil engineer he designed and constructed power plant structures at Pacific Gas & Electric. He has over 30 years of experience in design and construction supervision. Although petitioner is retired, in 2009 he performed work for several companies on a contract basis.

Nai-Fen Chen (petitioner wife) is a retired registered nurse. She retired around 2003. She entered the real estate business in or around 2007 and later became a licensed real estate agent. In 2009 petitioner wife received nonemployee compensation of $800 from Keller Williams Realty and a commission from Weichert Realtors of $869.50.

In or around 1980 petitioners purchased an 88.81-acre parcel of land in the town of Greenville, New York (town). Petitioners currently reside in a single family residence on that property. In or around 2003 petitioners decided to develop and subdivide the property with a plan to sell individual residential lots. Petitioners prepared a business plan under which the land would be subdivided into 15-20 lots and a one-family home would be built on each lot. Over the next several years petitioners hired land-use professionals who provided topographical mapping, land surveying, subdivision design, soil testing, and other related services in preparation for submitting a plan to the town planning board (board) for subdivision approval. Petitioners entered into an agreement with one of the land use professional companies, MJS Engineering, PC (MJS), to assist with planning for the subdivision of the property and drafting the subdivision plans for submission to the board.

Through MJS, petitioners submitted their first subdivision plan to the board in 2005 and enclosed the required escrow payment. MJS submitted several revised applications over the next several years, including 2006, 2007, 2008, and 2009. Over that same time period petitioners made additional escrow payments to the board as requested. In late 2009 the board granted preliminary approval for the subdivision plans. In December 2009 petitioners submitted an additional escrow payment to the board. In February 2010 MJS submitted to the board a well location plan and indicated that MJS would submit an application to the health department for a review of the proposed septic systems and wells. The record does not indicate that MJS performed any further activity on behalf of petitioners in pursuit of the subdivision plans for the property.

Throughout the term of petitioners' contract with MJS, MJS submitted to petitioners itemized billing statements for their services and the amount billed for those services. The itemized statements concern primarily subdivision planning activities including work performed by MJS in drafting the subdivision application.

For 2009 petitioners claimed Schedule C expense deductions relating to legal and professional services incurred by the hiring of land use professionals and for amounts paid in escrow to the board for their "Land Developing and

Subdivision" activity.  Petitioners also claimed deductions for car and truck expenses, meal and entertainment expenses, depreciation expenses, and home office and advertising expenses related to the land development project.

Respondent issued petitioners a notice of deficiency dated April 5, 2012, disallowing the claimed Schedule C expense deductions, determining that petitioners were not engaged in a trade or business with respect to the development of the property and that their expenses were capital expenditures with respect to the property.

Discussion

Generally, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a); see INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Additionally, deductions are strictly a matter of legislative grace, and taxpayers must satisfy the specific requirements for any deduction claimed for the taxable year.  INDOPCO, Inc. v. Commissioner, 503 U.S. at 84; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  In some cases the burden of proof with respect to relevant factual issues may shift to the Commissioner under section 7491(a).  Because the Court decides this case without regard to the burden of proof, section 7491 is inapplicable.

Trade or Business Expenses[2]

Section 162(a) provides that "[t]here shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  Section 162 does not, however, permit current deductions for startup or preopening expenses incurred by taxpayers before beginning business operations.  Sec. 195(a); Johnsen v. Commissioner, 794 F.2d 1157, 1160 (6th Cir. 1986), rev'g 83 T.C. 103 (1984).  "[T]o be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and * * * the taxpayer's primary purpose for engaging in the activity must be for income or profit."  Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).

With regard to the ownership and potential development of real property, it is necessary to determine whether the ownership and development of the property rises to the level of a trade or business, which requires an examination of the facts on a case-by-case basis.  See Higgins v. Commissioner, 312 U.S. 212, 217 (1941).  Where postpurchase activities related to development are only in their

_____

[2]To the extent petitioner wife was engaged in a trade or business as a real estate professional, petitioners did not:  (1) show which expenses related to the real estate business; (2) show whether such expenses were ordinary and necessary expenses of the real estate business; or (3) substantiate the expenses as required by the Code.

"exploratory or formative stages", then those activities do not rise to the level of a trade or business. Christian v. Commissioner, T.C. Memo. 1995-12.

Respondent, relying on Polakis v. Commissioner, 91 T.C. 660, 669 (1988), and Christian, alleges that petitioners were not engaged in a trade or business because petitioners did not have any prior experience with real estate development, the property remained undeveloped as of the time of trial, petitioners did not sell any of the plots, and petitioners have not demonstrated a profit from their activity.

In Polakis, the taxpayer, a vascular surgeon, purchased approximately 40 acres of undeveloped land. At the time of purchase the land was zoned as agricultural property and the minimum parcel size was 10 acres. Consistent with the zoning of the property, the taxpayer used or leased the land for farming and other agricultural activities. The taxpayer later investigated whether the property could in fact be developed. In this pursuit, he informally contacted three individuals regarding development, financing, and contract work. He did not enter into any contractual relationship with these individuals. The contractor contacted several members on the planning commission, obtained a copy of an applicable environmental impact report, and investigated the technical requirements for the development of the property. The taxpayer himself did not investigate the

requirements for developing the property and maintained no books or records of these investigative activities. When an issue arose regarding a sewer trunk line extension, several landowners, including the taxpayer, hired a lobbyist to promote their general interest regarding the extension of a sewer trunk line service to the property. The lobbyist attended city council meetings but did not specifically lobby for the extension of the sewer trunk line to the property. This Court found that the taxpayer was not in the business of developing real estate at the time he purchased the property and that his postpurchase activities never rose to the level of engaging in a trade or business so as to transmute the property into a business venture.

In Christian, the taxpayer, who had engaged in several real estate transactions before purchasing a property, but had not engaged in the trade or business of developing a real estate subdivision, sought investors for the property with the possibility of subdividing it. The taxpayer obtained advice regarding the requirements for subdividing the property but did not submit any of the preliminary plans to the county or start the formal subdivision process. The taxpayer showed the property to potential investors and other individuals and consulted with several real estate developers about ways to develop the property, but no preliminary plat was submitted, no final plat was prepared, and no lots were

staked out. The property remained in the same undeveloped condition as when it was purchased. The Court found that although the taxpayer consulted with real estate developers, devoted considerable time and effort in planning to develop the property, and attempted to attract potential investors and capital, the taxpayer never followed through on plans to develop the property into rural residential homesites. The taxpayer merely had plans for a potential business which never materialized. The Court found it significant that the taxpayer made no sales because there were simply no lots to sell.

Petitioners allege that they were engaged in the business of developing and selling the property but testified that they have not sold any lots and no final subdivision plans were ever submitted. Petitioner husband testified that sales activities were scheduled to begin in 2010; but in 2009 there were no marketing efforts to solicit contracts, nor were there any offers from prospective buyers. Petitioners expended time, energy, and money towards the planning and development of their property. However, it appears that from 2003 through 2009 most, if not all, of the development was devoted to planning and not to the sale and actual subdivision of the property. Petitioners kept and provided records; however, their development activities were still in the planning and exploratory phase and did not rise to the level of a trade or business. Therefore any

expenditures relating to the property were not currently deductible in 2009, unless the development project was completely abandoned in that year. See sec. 195; see also Richmond Television Corp. v. United States, 345 F.2d 901, 907 (4th Cir. 1965), vacated and remanded on other issues, 382 U.S. 68 (1965).

Abandonment

Section 165(a) allows as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. In the case of an individual, the deduction is allowable for losses incurred in any transaction entered into for profit. Sec. 165(c)(2); Ewing v. Commissioner, 91 T.C. 396, 416-417 (1988), aff'd without published opinion, 940 F.2d 1534 (9th Cir. 1991). Petitioners' profit motive is not at issue.

Where a taxpayer abandons a transaction entered into for profit because property used in the transaction has suddenly become useless, certain expenditures incurred in the year of abandonment thereby become immediately deductible as an abandonment loss for the year when such losses were actually sustained. Chevy Chase Land Co. v. Commissioner, 72 T.C. 481, 488 (1979); sec. 1.165-2(a), Income Tax Regs. Abandonment of an asset involves actual intent on the part of the owner to abandon it coupled with an affirmative act to carry out that intention. United States v. S.S. White Dental Mfg. Co., 274 U.S. 398 (1927).

With regard to tangible property, a finding of abandonment requires that the taxpayer satisfy three elements: (1) that the property be permanently discarded from use in the taxpayer's business, (2) that it no longer be useful in the taxpayer's business, and (3) that its usefulness in the taxpayer's business suddenly terminated. La Port v. Commissioner, 671 F.2d 1028 (7th Cir. 1982), aff'g T.C. Memo. 1980-355; Boston Molasses Co. v. Commissioner, 155 F.2d 45, 47 (1st Cir. 1946) (interpreting a prior version of the regulations), aff'g a Memorandum Opinion of this Court; sec. 1.165-2(a), Income Tax Regs. The Court of Appeals for the Second Circuit has stated that abandonment is met only in the event of a permanent abandonment or permanent devotion of the property to a radically different use. Hygrade Food Prods. Corp. v. Commissioner, 144 F.2d 115 (2d Cir. 1944). Substance and not mere form governs in determining a deductible loss. FRGC Inv., LLC v. Commissioner, T.C. Memo. 2002-276, aff'd, 89 Fed. Appx. 656 (9th Cir. 2004); sec. 1.165-1(b), Income Tax Regs.

Respondent alleges that petitioners are not entitled to an abandonment loss deduction, as they have not demonstrated that they completely abandoned development plans for the land in 2009. In support, respondent asserts that petitioners continue to own the property, they have not demonstrated that the

property is useless, nor have they demonstrated that they would not continue their efforts to develop the property in the future.

Petitioners testified that they had completely abandoned the development project in 2009 because of a severe decline in the housing market and a change in the wetland laws. Petitioner husband testified that a new delineation in the wetland laws changing the size of the buffer area resulted in a decrease in the amount of acreage that could be developed. Consequently, according to petitioners, the whole business and development plan for the property and the placement of the lots would need to change and petitioners would incur additional costs and expenses as a result of the change.

Although petitioners testified that a change in the wetland laws required them to abandon their development project as then formulated, they failed to demonstrate that the change in the laws affected their development efforts in a way which would require a complete abandonment of the development project. Petitioners' testimony indicates that the change seemed merely to modify petitioners' plans for the development of the property. In addition, despite the change in the wetland laws, MJS continued, near the end of 2009, to seek approval for preliminary subdivision plans. In December 2009 petitioners submitted an additional escrow payment to the board. In February 2010 MJS submitted to the

board a well location plan and indicated that MJS would submit an application to the health department for a review of the proposed septic systems and wells. In addition, although the parties stipulated as to the housing market in the year at issue, petitioners admitted, in correspondence with the Internal Revenue Service in 2011, that they would revive efforts to develop the land in the event of an economic recovery.

Although petitioners may have since abandoned the project in a year following 2009, petitioners have not demonstrated that they completely abandoned the development project in the year at issue. Consequently, petitioners are not entitled to an abandonment loss deduction for 2009.

Accuracy-Related Penalty

Respondent determined that petitioners are liable for an accuracy-related penalty under section 6662(a). Section 6662(a) and (b)(1) imposes a 20% penalty on the portion of an underpayment attributable to any one of various factors, including negligence or disregard of rules or regulations. "Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Code, including any failure to keep adequate books and records or to substantiate items properly. See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Under

section 7491(c), respondent has the burden of production with respect to the accuracy-related penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Respondent has met his burden.

Section 6664(c)(1) provides an exception to the section 6662(a) penalty if it is shown that there was reasonable cause for any portion of the underpayment and the taxpayer acted in good faith. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess his proper tax liability. Id. Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in view of the taxpayer's experience, knowledge, and education. Id.

Petitioners maintained records of their expenses; however, they were not engaged in an active trade or business in the year at issue and failed to present any testimony or information as to why they should not be subject to the accuracy-related penalty. Therefore, the Court sustains respondent's determination.

We have considered all of the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.