T.C. Summary Opinion 2017-51

UNITED STATES TAX COURT

ARTHUR DULIK, JR. AND ELLEN B. KUGLER DULIK, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16642-15S.                    Filed July 13, 2017.

Arthur Dulik, Jr., and Ellen B. Kugler Dulik, pro sese.

Brian E. Peterson, for respondent.

SUMMARY OPINION

PANUTHOS, Chief Special Trial Judge:  This case was heard pursuant to

the provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not

_____

[1]Unless otherwise indicated, subsequent section references are to the
Internal Revenue Code (Code) in effect for the year in issue, and all Rule

(continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated April 3, 2015, respondent determined a deficiency of $7,758 in petitioners' 2010 Federal income tax and a section 6662(a) accuracy-related penalty of $1,552.

After a concession,[2] the issues for decision are (1) whether legal fees petitioners paid in 2010 are properly deductible as an ordinary and necessary business expense relating to petitioner Arthur Dulik's activity as a sole shareholder of an S corporation, or whether the legal fees are deductible by petitioners as a miscellaneous itemized deduction as determined by respondent and (2) whether petitioners are liable for the accuracy-related penalty under section 6662(a) for the year in issue.

---

[1](...continued)
references are to the Tax Court Rules of Practice and Procedure.

[2]Petitioners conceded that the amount of the taxable dividend they received in 2010 was $20,394, and not $18,657 as reported on the return; thus they failed to report $1,737 ($20,394 − $18,657 = $1,737) in taxable dividend income.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference.

Petitioners resided in New York when the petition was timely filed. Mrs. Dulik is a certified public accountant (C.P.A.) and a practicing attorney. Mr. Dulik is also a C.P.A.

I.     Severance Agreement

In 1980 Mr. Dulik was employed by Byk-Gulden, Inc. (Byk-Gulden), a small domestic generic pharmaceutical company, as the "vice-president finance". In 1982 Mr. Dulik and Byk-Gulden signed an "Employee Secrecy Agreement" (secrecy agreement). The secrecy agreement includes, among other things, a noncompete covenant, which generally prevents Mr. Dulik from rendering services, "directly or indirectly, to any Competitor within the United States or any foreign country" for two years after terminating his employment, with limited exceptions.

Through a series of mergers and acquisitions Byk-Gulden became part of Nycomed US, Inc. (Nycomed), which was petitioner's employer from 2006 until May 2010. As of May 2010 Mr. Dulik was senior vice president, chief financial officer, chairman of the ERISA fiduciary committee, and a member of the board of

directors of Nycomed. As an executive for Nycomed Mr. Dulik was a participant in Nycomed's Supplemental Executive Retirement Plan (SERP).

On May 26, 2010, Nycomed terminated Mr. Dulik's employment. On May 27, 2010, Nycomed provided Mr. Dulik a proposed "Confidential Separation Agreement and General Release" (severance agreement), which provided terms for the termination of his employment, including severance pay (equivalent to 52 weeks of salary), a prorated bonus for 2010, and continuing COBRA healthcare coverage for 12 months after the date of termination. The severance agreement also incorporated by reference the secrecy agreement Mr. Dulik had signed with Byk-Gulden in 1982. In exchange for these benefits Mr. Dulik would agree to a number of terms, including: (1) compliance with the secrecy agreement, (2) a release of all claims against Nycomed arising out of his employment with the company, and (3) a nondisparagement clause in which he agreed to not make disparaging remarks about the company.

Mr. Dulik did not wish to sign the severance agreement as proffered. He retained the services of two law firms, the Wagner Law Group (Wagner Law) and Farrell Fritz, P.C. (Farrell Fritz), to assist with negotiating the terms of this agreement.

On June 18, 2010, Mr. Dulik spoke with the vice president of human resources for Nycomed and requested a number of modifications to the severance agreement, including the following: (1) remove the provision incorporating by reference the secrecy agreement; (2) add a provision that he be able to disclose to prospective employers that he was covered by a restrictive covenant; and (3) add a provision that the nondisparagement clause be mutual. During this conversation Mr. Dulik also disagreed with Nycomed's position regarding the postemployment benefits that he would receive under the SERP. On July 29, 2010, Wagner Law sent a letter on behalf of Mr. Dulik to Nycomed's ERISA Fiduciary Committee, reasserting Mr. Dulik's position regarding his benefits under Nycomed's SERP plan.

On August 18, 2010, Nycomed sent a letter to Mr. Dulik's attorney, attaching the severance agreement and the secrecy agreement. The letter from Nycomed provided Mr. Dulik with the following ultimatum:

> I am writing to advise you that the Company's severance proposal only remains open until **Wednesday, August 25, 2010 at 12:00 noon (EST)**, after which it will be withdrawn. Thus, if this office does not receive an <u>original</u> signature on the attached Agreement by that date and time, the company's severance offer will be withdrawn, but Mr. Dulik will still be bound by all the terms and conditions of the agreement to which he is a party, as well as all obligations under the Company's various policies and under statutory and common law. Please be advised that in making this severance offer the Company

specifically does not concede Mr. Dulik's separation from Nycomed was for reasons other than "Cause," as defined under the Nycomed US Inc Executive Severance Pay Plan or any other plan or program to which Mr. Dulik is subject, and expressly reserves all of its rights in that regard. Please note that the attached Agreement is substantially the same version you indicated that your client was prepared to sign weeks ago, when you stated that Mr. Dulik was prepared to agree to all the terms the Agreement, except for the release of the SERP claim. This version requires Mr. Dulik to release Nycomed from any and all claims, including but not limited to the SERP claim he has raised and any other pension-related claims.

After consulting with his attorneys, Mr. Dulik signed the severance agreement attached to the letter and submitted it by the due date of August 25, 2010.

On September 24, 2010, Mr. Dulik incorporated AED Associates II, Inc. (AED), and caused it to elect treatment as an S corporation. Mr. Dulik was the president and sole shareholder.

II.     Legal Fees

Mr. Dulik paid Wagner Law a total of $16,229 for legal services performed in 2010. According to Wagner Law's billing reports, the following legal services were performed for Mr. Dulik in June, July, and August of 2010: (1) research and review section 409A regulations; (2) drafting argument for full benefits from SERP plan; (3) consult with another attorney about the section 409A matter; (4) telephone conference with Nycomed regarding the status of severance negotiations and viability of section 409A argument; (5) review letter from Nycomed; (6) draft

letter to Nycomed; (7) review pension calculations; and (8) review draft severance agreement from Nycomed.  The billing statements Wagner Law sent to Mr. Dulik for services performed in June, July, and August of 2010 were, according to their heading, regarding "Defined Benefit SERP Matters".

Mr. Dulik paid Farrell Fritz a total of $10,096 for legal services performed in 2010.  According to Farrell Fritz's billing reports, the following legal services were performed for Mr. Dulik during June and August 2010:  (1) review of severance agreement and related documents; (2) review of SERP documentation; (3) telephone conferences and meetings to discuss severance agreement and SERP documents with Mr. Dulik; (4) review proposed revisions to severance agreement; (5) review final severance agreement offer from Nycomed; and (6) meet with Mr. Dulik regarding final severance agreement.  The billing statements Farrell Fritz sent to Mr. Dulik for services performed in June and August of 2010 were, according to their heading, regarding the "Severance Agreement".

During 2010 Mr. Dulik paid a total of $26,325 ($16,229 + $10,096 = $26,325) to Wagner Law and Farrell Fritz out of his personal bank account.

III.    Tax Returns and Notice of Deficiency

Mr. Dulik timely prepared and filed for AED a 2010 Form 1120S, U.S. Income Tax Return for an S Corporation, signed and dated April 10, 2011.  AED

did not report any gross receipts or sales and claimed a total of $31,125 in deductions for expenses, including a deduction of $26,781 for "legal and professional" expenses, resulting in a loss of $31,125. Petitioners timely filed a joint 2010 Form 1040, U.S. Individual Income Tax Return, reporting the $31,125 loss from AED on their Schedule E, Supplemental Income and Loss. Petitioners reported total tax of $233,631.

Respondent disallowed the $26,781 deduction for legal fees claimed as ordinary and necessary business expenses relating to AED, determining that the attorney's fees related to Mr. Dulik's employment and should properly have been deducted on petitioners' Schedule A, Itemized Deductions. Petitioners timely filed a petition asserting that the legal fees represented business expenses for AED because Mr. Dulik retained the services of the attorneys so that he could "continue to conduct his business and earn income consulting in the pharmaceutical industry".

Discussion

I.  Burden of Proof

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115

(1933). Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioners did not allege or otherwise show that section 7491(a) applies. See sec. 7491(a)(2)(A) and (B). Therefore, petitioners bear the burden of proof. See Rule 142(a).

II.    Legal Fees

Petitioners assert that their legal fees are deductible as ordinary and necessary business expenses relating to the activities of AED. Section 162(a) provides the general rule that a deduction is allowed for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". Generally expenses not incurred in carrying on a trade or business activity but in the production or collection of income are deductible only as miscellaneous itemized deductions on Schedule A. Secs. 67(a) and (b), 211, 212(1). Miscellaneous itemized deductions are deductible only to the extent that the total of such deductions exceeds 2% of the individual's adjusted gross income. Secs. 67(a) and (b), 211, 212(1). Itemized deductions may be limited under the overall limitations on itemized deductions under section 68 and may have an alternative minimum tax implication under section 56(b)(1)(A)(i).

Generally, legal fees are deductible as an ordinary and necessary business expense only if the matter with respect to which fees were incurred originated in

the taxpayer's trade or business and only if the claim is sufficiently connected to that trade or business; the treatment does not depend on the consequences that might result from a win or loss of a legal claim. See United States v. Gilmore, 372 U.S. 39 (1963); Kenton v. Commissioner, T.C. Memo. 2006-13, 2006 WL 237112; Test v. Commissioner, T.C. Memo. 2000-362, 2000 WL 1738858, aff'd, 49 F. App'x 96 (9th Cir. 2002).

In Test v. Commissioner, 2000 WL 1738858, the taxpayer pursued legal claims related to her employment with the University of California, San Francisco (UCSF) as director of the Center of Prehospital Research and Training, in part because she feared harm to her reputation which, in turn, would harm a business, Save-a-Life Systems (SLS), that she operated independent of her position at UCSF. While she was launching SLS, the taxpayer's UCSF department became the subject of a State audit. Before a draft of the audit report was released publicly, the San Francisco Examiner published several stories about the audit. During this time the taxpayer retained counsel to respond to the negative publicity and attempted to prevent the public release of the draft of the audit report, among other things.

The taxpayer claimed that she hired counsel primarily to maintain her professional reputation, which was important to the success of SLS. Relying on

prior caselaw,[3] we held that we look to the origin of the claim rather than the consequences of the legal action. Id., 2000 WL 1738858, at *5. Because the claim originated with her employment at UCSF, not with her operation of SLS, the legal fees could not be claimed as business deductions on Schedule C but rather were properly claimed as miscellaneous itemized deductions on Schedule A. Id. at *6.

Petitioners assert that after Nycomed terminated Mr. Dulik's employment he was "pursuing his business" and seeking to work as an independent contractor consulting for the pharmaceutical industry; but because of the noncompete covenant of the secrecy agreement, no one would hire him. Mr. Dulik testified that he signed the severance agreement because he would have had to forgo his severance pay if he had not signed it. Mr. Dulik also testified that he did not incorporate AED until September 2010 because "[o]riginally when I started the business it was going to be a Schedule C proprietorship * * * later in 2010 I formed a subchapter S corporation fearing * * * legal issues could arise out of some of my activities."

---

[3]See United States v. Gilmore, 372 U.S. 39, 49 (1963); Ahadpour v. Commissioner, T.C. Memo. 2000-68, aff'd, 32 F. App'x 319 (9th Cir. 2002).

Petitioners do not assert that the claim against Nycomed was rooted in Mr. Dulik's consulting business; instead they contend that the origin of the claim is Nycomed's restriction on Mr. Dulik's ability to work. Petitioners assert that Mr. Dulik hired counsel solely to renegotiate the terms of the severance agreement, so that he could operate a business as a consultant in the pharmaceutical industry.[4] Mr. Dulik testified that but for his desire to work in the pharmaceutical industry he would have not hired counsel; for example, if he had wanted to work as a C.P.A. for an accounting firm, he would not have tried to negotiate the terms of the severance agreement.

Although the terms of the severance agreement may have prevented Mr. Dulik from operating a consulting business in the pharmaceutical industry, we look to the origin of the claim, not to the potential consequences of a win or loss in negotiating the terms of the severance agreement. Mr. Dulik's claim arose from his status as a former employee of Nycomed, not from his consulting business. He hired attorneys because he was trying to negotiate the terms of the severance

---

[4]Petitioners assert that the noncompete covenant of the secrecy agreement was overly broad and in violation of New York State law. In response to the question of why his counsel was also working on renegotiating his SERP benefits, Mr. Dulik testified that the attorneys had devised a strategy to offer to exchange the full SERP benefit (which the attorneys were asserting that he was entitled to) for the removal of the secrecy agreement.

agreement proffered in connection with the termination of his employment at Nycomed. See Gilmore, 372 U.S. at 49; Kenton v. Commissioner, 2006 WL 237112, at *2-*3; Test v. Commissioner, 2000 WL 1738858, at *4. We conclude that petitioners are not permitted to deduct the legal fees as ordinary and necessary business expenses of Mr. Dulik's consulting business as a flowthrough from AED.[5] However, petitioners are entitled to $26,325[6] as a miscellaneous itemized deduction on Schedule A, subject to the limitations set forth supra. See secs. 56(b)(1)(A)(i), 67(a) and (b), 68, 211, 212(1).

---

[5]We further note that it would appear that Mr. Dulik was not "carrying on" a trade or business when the legal expenditures were made, as required by sec. 162. Carrying on a trade or business requires more than preparatory work such as initial research or solicitation of potential customers; it requires that the business have actually commenced. Ordinarily, expenses paid after a decision has been made to start a business, but before the business commences, are not deductible as ordinary and necessary business expenses. These preparatory expenses are capital. See secs. 162, 195; Frank v. Commissioner, 20 T.C. 511, 513-514 (1953); Christian v. Commissioner, T.C. Memo. 1995-12, 1995 WL 9151, at *5. There is nothing in the record indicating that Mr. Dulik commenced any business activity as a sole proprietor, nor is it clear to what extent, if any, AED conducted business activity after its incorporation.

[6]Petitioners provided substantiation for legal fees totaling $26,325, and did not provide an explanation for the discrepancy of $456 ($26,781 − $26,325 = $456).

III.    Accuracy-Related Penalty

Section 6662(a) and (b)(1) imposes an accuracy-related penalty on any portion of an underpayment of Federal income tax that is attributable to the taxpayer's "negligence or disregard of rules or regulations".[7]  The term "negligence" in section 6662(b)(1) includes any failure to make a reasonable attempt to comply with the Code and any failure to keep adequate books and records or to substantiate items properly.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  Negligence has also been defined as the failure to exercise due care or the failure to do what a reasonable person would do under the circumstances.  See Allen v. Commissioner, 92 T.C. 1, 12 (1989), aff'd, 925 F.2d 348, 353 (9th Cir. 1991); see also Neely v. Commissioner, 85 T.C. 934, 947 (1985).  The term "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c).

Under section 7491(c), the Commissioner bears the burden of production with regard to penalties.  See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

_____

[7]The notice of deficiency reflected an increase in tax of $7,758.  Petitioners' return as filed reported total tax of $233,631.  Petitioners' understatement of $7,758 does not exceed $24,139, which is the greater of 10% of the tax required to be shown on the return for the taxable year ($233,631 reported on return + $7,758 increase in tax = $241,389 tax required) or $5,000.  Therefore, the understatement is not substantial.  See sec. 6662(b)(2), (d)(1)(A), (2)(A).  Respondent asserts the penalty only on the basis of negligence.

To meet that burden the Commissioner must produce sufficient evidence to show that it is appropriate to impose the accuracy-related penalty.[8] See id. Petitioners kept adequate records, providing bills from Mr. Dulik's legal counsel, bank statements, and other records which substantiated most of the amount claimed as a deduction for legal fees. See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Respondent asserts that the accuracy-related penalty is appropriate because petitioners are both C.P.A.s. We do not find that it is appropriate to impose the accuracy-related penalty to the extent that it is attributable to petitioners' deduction for legal fees, for the reasons set forth infra.

Application of the accuracy-related penalty may be avoided with respect to any portion of an underpayment if it is shown that there was reasonable cause for such portion and the taxpayer acted in good faith with respect to such portion. Sec. 6664(c)(1). The determination of whether the taxpayer had reasonable cause

---

[8]Petitioners did not allege, in their petition or at trial, that the accuracy-related penalty at issue was not "personally approved (in writing) by the immediate supervisor of the individual making * * * [the penalty] determination." Sec. 6751(b)(1). That issue is therefore deemed conceded. See Rule 34(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded."); cf. Lloyd v. Commissioner, T.C. Memo. 2017-60, at *7 n.3 (deeming similarly conceded any sec. 6751(b)(1) challenge to assessable penalties in a sec. 6330 levy case).

and acted in good faith depends upon the pertinent facts and circumstances of a particular case. Sec. 1.6664-4(b)(1), Income Tax Regs.

As previously discussed, petitioners kept adequate records to substantiate the legal fees. Further, respondent determined and we conclude that petitioners are entitled to deduct their legal fees as an itemized deduction (subject to applicable limitations). Thus, the underpayment in this case is primarily attributable to the characterization of the claimed deduction for legal fees, rather than disallowance of the deduction. Mr. Dulik testified about his understanding of the facts and law; but for his consulting business, he would not have hired counsel to negotiate the Nycomed severance agreement, and for that reason he believed that the legal fees could be deducted by the corporation and the deduction passed through to him. The origin of the claim doctrine, regarding treatment of this particular type of expense for legal fees, is a technical area of law, is fact intensive, and required a reference to and analysis of caselaw as more fully discussed in this opinion. Under the circumstances of this case, we conclude that petitioners had reasonable cause and good faith in their treatment of the deduction for legal fees. See sec. 6664(c)(1); sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioners conceded that they failed to report taxable dividend income of $1,737. Petitioners did not provide an explanation for this failure or assert that

they tried to determine the proper tax liability.  We conclude that petitioners were negligent in their failure to report this taxable dividend income and did not establish that they had reasonable cause and acted in good faith under section 6664(c).  See sec. 6662(c); Allen v. Commissioner, 92 T.C. at 12; Neely v. Commissioner, 85 T.C. at 947; sec. 1.6662-3(b)(1), Income Tax Regs.

We have considered all of the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.